UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 22-34-DLB

REGINALD MYERS,     PLAINTIFF

v.     **MEMORANDUM OPINION AND ORDER**

FCI ASHLAND, et al.,     DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Reginald Myers is a federal inmate currently confined at the Federal Correctional Institution ("FCI")-Ashland located in Ashland, Kentucky. Proceeding without an attorney, Myers has filed a civil complaint against Defendants FCI-Ashland, Warden LeMaster, and Case Manager Coordinator Issacs pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). (Doc. #1). By prior Order, the Court granted Myers's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. #9). Thus, the Court must conduct a preliminary review of Myers's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.

Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is obviously immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

1

662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).  See also Fed. R. Civ. P. 8.  The Court evaluates Myers's complaint under a more lenient standard because he is not represented by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

In his complaint, Myers alleges that he was told that he was not eligible for release to home confinement under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act")[1] because of his prior convictions, at least one of which was classified by prison staff as a violent felony conviction.  (Doc. #1 at p. 2).  However, he alleges that he later discovered that Issacs and LeMaster were allowing white inmates who had prior violent convictions "to receive or be eligible for this program." (*Id*. at p. 3).  According to Myers, "this is clearly discrimination based on race and favoritism based on race along with preferences based on race" because no similar exceptions were made for Black inmates with past or present violent convictions.  (*Id*.).  Based on these allegations, Myers brings claims for violations of his rights to due process and equal protection, implicating the Fifth and Fourteenth Amendments.  (*Id*. at p. 5).[2]  As

---

[1] The CARES Act was enacted on March 27, 2020, and includes a provision that temporarily expands the length of the maximum amount of time for which the Attorney General is authorized to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2). See CARES Act, § 12003(b)(2) (enacted Mar. 27, 2020).

[2] Although Myers alleges a "Sixth Amendment Due Process violation," it is the Fifth Amendment that guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law."  See U.S. Const. amend. V.  Moreover, with respect to his equal protection claim, the Equal Protection Clause of the Fourteenth Amendment, by its terms, applies to the States.  See U.S. Const. amend. XIV ("No State shall…deny to any person within its jurisdiction equal protection of the laws.").  However, while "[t]he Fifth

2

relief, he requests that the Court find "FCI-Ashland guilty of discrimination based on race" and that Myers be released to home confinement. (*Id*. at p. 9). Myers also seeks $10 million in monetary relief for "pain and suffering." (*Id*.).

However, Myers's complaint must be dismissed for failure to state a claim for which relief may be granted. First, to the extent that Myers seeks earlier or immediate release from physical custody, such relief must be sought in a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, not in a civil complaint filed pursuant to *Bivens*. *See Terrell v. United States*, 564 F.3d 442, 446 (6th Cir. 2009) (recognizing a long line of Supreme Court precedent holding that "a challenge…of a prisoner's underlying conviction or sentence, that necessarily demonstrated the invalidity of the confinement's legality…can only be brought under habeas.") (citing *Preiser v. Rodriguez,* 411 U.S. 475 (1973), *Heck v. Humphrey,* 512 U.S. 477 (1994), *Edwards v. Balisok,* 520 U.S. 641, (1997), and *Wilkinson v. Dotson,* 544 U.S. 74 (2005)). *See also Muhammed v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus…"). Thus, Myers may not seek earlier release to home confinement as a remedy in a civil complaint.

Turning to Myers's request for monetary relief for his due process and equal protection claims, such claims are brought pursuant to *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens* 403 U.S. at 397. However, a *Bivens*

---

Amendment…does not itself contain a guarantee of equal protection, [it] instead incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations omitted).

3

claim is only properly asserted against individual federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). Thus, Myers's may not bring a *Bivens* claim against "FCI-Ashland," which is, in essence, a claim against the Bureau of Prisons (a federal agency). *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.").

Moreover, Myers's due process claim fails to state a claim for which relief may be granted, as he has no due process rights to placement on home confinement. "When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011)(citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pt. 544 (2010)). An inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484-86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("...the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility

4

for rehabilitative programs in the federal system], 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

In addition, while 18 U.S.C. § 3624(c) authorizes that BOP to *consider* placing an inmate in home confinement, a prisoner is not automatically entitled, or guaranteed, such placement for any amount of time. 18 U.S.C. § 3624(c). *See also Heard v. Quintana*, 184 F.Supp. 3d 515, 520 (E.D. Ky. 2016). *See also Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009); *Boals v. Quintana*, No. 5:15-cv-335-JMH, 2015 WL 8665404, at *2 (E.D. Ky. Dec. 11, 2015). Rather, "the decision to place an inmate in pre-release community confinement and/or home confinement is discretionary and will be 'determined on an individual basis' according to the factors in 18 U.S.C. § 3621(b)." *Boals*, 2015 WL 8665404 at *2 (citing *McIntosh v. Hickey*, No. 10-cv-126-JMH, 2010 WL 1959308, at *3 (E.D. Ky. May 17, 2010)). Likewise, while the CARES Act allows the Bureau of Prisons to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement," it does not give courts the authority to grant home confinement requests. Pub. L. 116, 134 Stat. 281, 516, § 12003(b)(2). And the BOP's placement decisions, including determinations regarding home confinement, are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions. 28 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). Cf. *Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-

5

6 (E.D. Ky. Nov. 13, 2015). For all of these reasons, Myers's due process claim must be dismissed.

Turning to Myers's equal protection claim, this claim also fails to state a claim for which *Bivens* provides a remedy, as it does not fall within the three existing contexts in which the United States Supreme Court has recognized a private right of action for damages for a constitutional violation. Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in only three circumstances: (1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854-55 (2017).

However, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (recognizing that, since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb."). Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743, 206 L. Ed. 2d 29 (2020). *See also Ziglar*, 137 S.Ct. at 1857 (re-emphasizing that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity"); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have

6

consistently refused to extend *Bivens* to any new context or new category of defendants.").

Applying *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 140 S.Ct. at 743 (citations omitted). Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]" *Id*. (quoting *Ziglar*, 137 S.Ct. at 1859). A difference is "meaningful" if, for example, it involves a different constitutional rights, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Ziglar*, 137 S.Ct. at 1860.

If the Court finds that a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action…will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who

7

should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up).

In this case, it is plain that Myers's equal protection claim presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. Even though, like the claim implied in *Davis*, Myers's claim sounds in the Fifth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Myers's claim that prison staff have engaged in racial discrimination in evaluating whether an inmate is precluded from relief under the CARES Act based on the nature of his or her prior offenses is a completely different context than the Fifth Amendment claim in *Davis* against a Congressman who terminated an employee on the basis of gender. *Ziglar*, 137 S.Ct. at 1864 (noting that even a "modest extension" of a prior Supreme Court case constitutes a new context).

The Court must therefore proceed to the second step in the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019). The Sixth Circuit has recognized that because "separation of powers should be a guiding light…the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937, 210 L.Ed.2d 207 (2021)).

8

There are multiple reasons that a judicially-implied remedy for damages is not appropriate here. First, through 42 U.S.C. § 1983 Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so federal actors. To the contrary, Congress has taken steps to curtail prisoner litigation, not expand it. *See Ziglar*, 137 S. Ct. at 1865 (noting that Congress could have, but declined to, provide a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act of 1995).

Second, there are alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the Bureau of Prisons' inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S.Ct. at 1858). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."). Likewise, the threat of an investigation through the BOP's Internal

9

Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct.

Finally, the context of Myers's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' – counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85). *See also Earle v. Shreves*, 990 F.3d 774, 780-81 (4th Cir. 2021) ("Given the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts."). This is particularly true when it comes to prison placement decisions, an area where the BOP has complete control. *See Tapia*, 564 U.S. at 331; *Moody*, 429 U.S. at 88 n.9.

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S.Ct. at 1803 (quoting *Hernandez*, 140 S.Ct. at 743). Thus, because there are multiple factors that counsel strongly against implying a *Bivens* remedy for Myers's equal protection claims alleging discrimination in CARES Act eligibility decisions, the Court may not do so here. *See Harris v. FBOP*, No. 19-3585, 2020 WL 7586968 (6th Cir.

Sept. 22, 2020) (district court did not err in declining to extend *Bivens* remedy to prisoner's "right-to-marry" claim brought under the equal protection component of the Fifth Amendment's due process clause); *Zelaya v. Hammer*, 516 F. Supp. 3d 778, 796 (E.D. Tenn. 2021) (declining to extend a Bivens remedy to plaintiffs' equal-protection claim under the Fifth Amendment); *Banks v. LaRose*, No. 4:17CV2479, 2018 WL 1942195, at *3 (N.D. Ohio Apr. 25, 2018) (declining to extend a *Bivens* remedy to plaintiff's equal protection claim based on the classification of prisoners in segregations versus those held in the general prison population). Because *Bivens* does not extend to provide a remedy for Myers's equal protection claim, he fails to state a claim for which relief may be granted. *Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").

For all of these reasons, Myers's complaint fails to state either a due process or equal protection claim for which the relief that he seeks may be granted. Thus, his complaint will be dismissed on initial screening.

For clarification, after filing his complaint, Myers filed a "motion to supplement" seeking to "further [his] brief" to add allegations that FCI-Ashland did not commemorate the celebration of the federal holidays of Dr. Martin Luther King, Jr. Day on January 15, 2022, or Juneteenth on June 19, 2022, with a special meal, although it did have a celebration (including a special meal) for the celebration of the Fourth of July on July 4, 2022. (Doc. # 14). Myers also filed a "motion for leave to amend complaint," seeking to "bolster his claim of discrimination against the BOP" with allegations regarding the BOP's settlement of litigation in California in which Myers claims the BOP agreed to "discontinue as a criteria…that the inmate had to have served 50% of his sentence, along with not

11

using the nature of a past conviction in order to deny the CARES Act to an inmate." (Doc. #14).

However, Myers did not submit a proposed supplemental or amended complaint with either of his motions. While requests to supplement or amend a complaint may be warranted in appropriate circumstances, *see generally* Fed. R. Civ. P. 15, even if it were warranted here, Myers's failure to tender a proposed amended or supplemental complaint warrants denial of his motions. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 414 (6th Cir. 2014) (a party seeking an amendment must attach a copy of the proposed amended complaint to his motion). Moreover, even if the Court considered the factual allegations suggested by Myers's motions, none of these additional facts alter the Court's conclusion that Myers's complaint must be dismissed for the reasons articulated herein. For both of these reasons, Myers's motions seeking to supplement and amend his complaint will be denied. Accordingly, it is hereby **ORDERED** as follows:

1. Myers's complaint (Doc. #1) is **DISMISSED**;
2. Myers's motion to supplement complaint (Doc. # 10) and motion to amend complaint (Doc. #14) are **DENIED**;
3. The Court will enter an appropriate Judgment; and
4. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

This 9th day of December 2022.



Signed By:
David L. Bunning
United States District Judge